Case number 1-5-2-5-6-8, Daniel Emerson, Murillo-Robles v. Loretta Lynch Good morning Your Honors, my name is Carlos Estrada and I represent Mr. Murillo in this case. I would like to ask Mr. Murillo if he would be so kind as to provide a brief  Mr. Murillo-Robles v. Loretta Lynch Thank you, Your Honor. There are three reasons why we believe that this Court should rule in favor of Mr. Murillo. First, he never failed to appear to this hearing on April 30, 2012. Second, even if he had failed to appear, there are exceptional circumstances to allow for reopening of this case. And lastly, we believe that his response was an appropriate remedy to reopen this case. Now, with respect to not failing to appear, this Court has said in Herbert that when a person arrives 30 minutes late, it's not really a failure to appear. At least, this Court has questioned whether that's really a failure to appear. Mr. Murillo actually appeared in immigration court 14 times before April 30, 2012. He was always on time, and on the day in question, he actually arrived, he thought he was arriving early, but in fact, he had been scheduled at 8 o'clock instead of 9 o'clock. It was an innocent mistake, a very unfortunate mistake for him. He was ordered removed, his mother was ordered removed, and also his brother was ordered removed. What I think the Court, what I'd like the Court to focus on is the fact that Mr. Murillo was never trying to delay his removal proceedings. He was never trying to delay going to court. In fact, there is a long, long history, as indicated, 14 times of being always on time or early. There are several other courts who have ruled on this issue of being tardy for your hearing, and I'm referring to the Second, the Third, the Fifth, and the Ninth Circuit Court of Appeals. All of them have said that mere tardiness is not a failure to appear. Does it make any difference that this case is on a motion to reopen, rather than on a petition for review of the removal order itself? No, Your Honor, it doesn't make any difference, because this case, he never had, well, in this case, he never had his day in court. No, no, but the standard is somewhat different, isn't it? Yes, Your Honor. And it's some of the cases that you cite deal not with motions to reopen, but with a finding of removal in absentia, and an immediate appeal to the BIA, and then a petition for judicial review. So there's a slightly different standard presented in this case, whereby your own concession or by your argument, you may have to show exceptional circumstances. We would have to show exceptional circumstances, and I think that we do, Your Honor, but before we, I can explain that more fully, of course. In 2006, this court said in Carwizza v. Gonzalez that the exceptional circumstances, for example, would be considered the length of residence of the petitioner in the United States, Your Honor, the harm that he would suffer, and also what inconvenience the government would suffer if the petition for review were to be granted, if the reopening were to be granted. Now, we are arguing, indeed, that there are exceptional circumstances in this case, because the day of the hearing, Mr. Maria's counsel, who is now suspended and continues to be suspended, never argued that he was actually on his way to court. In fact, all she said during the hearing, which lasted, well, over three minutes, all she said was, yes, Your Honor, and that was at the end of the hearing when he and his family were removed. Is there anything in the record that indicates whether she knew at that point that he was on his way to court? Actually, the government cites, I believe it's at page 15 of their brief, and there is a statement from her at pages 224 and 225 of the administrative record, Your Honor, and that statement basically is saying that she had frantically tried to contact Mr. Maria that morning, and that she had actually left a message for his mother the night before. However, Your Honor, this statement is made in the context of the complaint against the I understand that, but that doesn't answer my question, all right? Is there any evidence in the record that counsel, at the time she appeared before the IJ, knew that Mr. Maria was on his way to court? No, there's nothing on the record. So she can't really be faulted for not saying to the IJ, Judge, my client is on the way to court. But she does say later on, Your Honor, as indicated to the board of receivers, that she had tried to. Now, that's her ineffective assistance of counsel right there, Your Honor. She had, in fact, said to the IJ, Your Honor, I've been trying to reach my client, if I can just have a second call or maybe a... That's... Now, Mr. Maria had the misfortune of hiring two grossly incompetent lawyers, Your Honor, one of whom was disbarred, as we know from the record, and the second one suspended, and she continues to be suspended. Now, with respect to the possibility of a sua sponte reopening, Your Honor, that's... I know that's probably... Do you have any authority that indicates that we have jurisdiction to consider that? Actually, Your Honor, there's a recent case in the Ninth Circuit, and I was going to submit a 28-J letter for that, but unfortunately, I spoke with counsel on that, who represented the petitioner in that case, and she told me that there's a petition for a re-hearing on that case, so I hesitated. If you want, you could still submit a 28-J letter. Yes, Your Honor, because I think it does address the issue of... Petitions for re-hearing in the Ninth Circuit are not exactly rare. So we're familiar with that situation. I didn't mention that to her, actually, when I spoke with her on Tuesday, Your Honor. Yes, Your Honor, that case is called Bonilla v. Lynch, Your Honor, and it does say that if there is a legal error, if the judge, the I.J., made an error thinking that the non-citizen was not eligible, and he denies the motion to reopen based on that, then the court has jurisdiction. But as I said... Do we have any cases from this circuit that you can cite that leave any open room for us? As far as to respond to reopening, Your Honor, no, I do not. Congress has been pretty tough on jurisdiction over purely discretionary decisions. Yes, and that's exactly why, perhaps my statement was that I know that that would be probably the most difficult part of this argument. Now, I only have a few seconds, but I do want to address another issue, Your Honor. Mr. Bonilla was, in fact, suffered a conviction, and it's a very unfortunate case. Everybody, there was a fatality in this case. And that, Your Honor, is not... I know that it's not part of the... It's beyond the scope of review for this court, Your Honor, but I would argue that that conviction, actually, I know that that conviction would not make him deportable. And therefore, it's not even an issue, but I just wanted to let the court know. Thank you. Good morning, and may it please the court. Attorney Sabatino F. Leo on behalf of the respondent, the United States Attorney General. It's clear in this case that the agency acted within its broad discretion when it denied petitioner's motion to rescind the in absentia removal order. It's not clear to me. You know, let's not overstate the case. First of all, you've got to follow. You concede that he was, what, 30 minutes late at the outside? Yes, Your Honor, the record reveals that. Yes, Your Honor. All right. The case law that I can find, at least in other circuits, there are many courts of appeals which wouldn't even treat that as being in absentia. Minor tardiness is not a ground to say someone was absent from a hearing. There are several circuits that have said that. I grant you we don't have any case law on that, but this is a case of minor tardiness. Your Honor, I would concur with respect to your conclusion with regard to the other circuits. However, as indicated in the respondent's brief, the underlying circumstances of those particular cases reveal extenuating factors, mitigating factors, intervening causes, in a sense, of what prevented that arrival. And you don't think it's an extenuating factor that you've got a young man who comes here at age 11, all right? He is in circumstances where he is pretty clearly entitled, going to prevail and get to stay in this country, winds up getting removed basically through the incompetence of not one, but two sets of counsel, all right? His case on the merits against removal is very strong. His prospects of being allowed to stay in this country are very good. I don't really know how much more he has to show to show exceptional circumstances. Your Honor, I would respectfully disagree with your contention that the likelihood of him achieving residential status or lawful permanent resident status and having those conditions removed are beyond doubt here because what, in fact- When you say they were beyond doubt, I said they were pretty good. I mean, he came here as a minor. His mother married an American citizen. He seems to fall into a class which has been typically preferred as far as having a petition for legal status here approved. And he's been sidetracked time and again through no fault of his own, the incompetence of counsel. Now, he made a mistake. He was late for the hearing. There's no evidence that that was willful or flagrant. He's got an explanation for it. There's no evidence that he was ever personally notified of the time of the hearing. The attorney who represented him at the time of the in absentia removal completely failed to make a contemporaneous motion to reopen, which she surely should have done, never explained to the immigration judge that she was trying to reach her client and couldn't, which might have led to an inference that he was on her way. I don't understand why the government is taking such a hard line on this case. You've got a right to do what the government has a right to do, what it has a right to do, all right? But please don't start your argument by telling me that this is a clear case because it isn't. Understood, Your Honor. And what I would like to do is the facts reflect that Petitioner was a derivative beneficiary of his mother's petition for removal of those conditions on her lawful permanent residence. Those conditions have not been removed. Therefore, to come to state, in essence, that he has a very good chance of having those conditions removed and becoming a lawful permanent resident is simply not what the facts reveal. The facts, in fact, reveal that Petitioner's mother's conditions were never removed, and she is, in fact, subject to a final order of removal. Through the incompetence of the same attorney, isn't the order of removal against her also in absentia? There's no indication in the record that it's in absentia. First off, what it does indicate in the record is that the Petitioner's mother and brother were severed from this case in order to pursue prosecutorial discretion and administrative closure. That never took place, and they were subject to final orders of removal. There's no indication, no evidence in the record, and I have no evidence for you that they were ordered removed in absentia. As a result, the Petitioner being a derivative beneficiary of an individual who has ceased to become a lawful permanent resident would not make it more likely that that particular individual would then again achieve permanent resident status. And to your second point, I think, Your Honor, there is in the record, the Petitioner has conceded time and again that it's his own malfeasance, that he mistakenly reviewed the notice to appear on April 30, 2012. Let me ask you about that, because it seems that's precisely what the BIA relied on, that even though he had a bad lawyer, the bad lawyer wasn't responsible for him being a half hour late. That is correct, Your Honor. And here's what causes me to pause about that some. He walks in the door at the hearing office. He's a half hour late. His lawyer is there. The judge is still there. The judge has told the lawyer that he would consider reopening if the lawyer filed something that day, if his client does get there. The client does get there. It's shocking that the lawyer didn't go grab the judge or file something. So if you look at it in terms of what the outcome was, the lawyer played a central role in turning a 30-minute late that otherwise wouldn't have been a problem into an inabstantial ruling. So it seems to me the BIA opinion fundamentally missed the point regarding the lawyer's central role in driving the outcome here. And, Your Honor, and I understand your position with regard to that matter, but I think it's eminently clear that it was Petitioner's volitional actions that prevented him from being there on time. There's actually nothing in the first circumstance. That's right, but what I'm saying is that being there not on time wasn't sufficient to trigger the result. That was step one. Step two was then not filing that day or asking the judge to do something. Let me put it this way. It seems to me that if he'd had a competent lawyer, it would have been reopened because the judge, at least he would have had a shot at it. But the judge was there and invited the filing that was never made. Your Honor, and I think where the board and the agency specifically did a very good job with regard to this opinion is that they went ahead and excused the untimeliness. This was a motion to reopen and rescind that was filed three years after that. They didn't excuse the 30 minutes late. In fact, they hinged the decision on the 30 minutes late even though it wasn't a sufficient cause of the ruling. I believe I understand your point, but I think what we have to get into is significantly what is the statute. What does the statute say? 8 U.S.C. 1229A says specifically exceptional circumstances beyond the alien's control. Everything within this record, regardless of how callous we feel or the malfeasance of a petitioner's counsel with respect to some of the proceedings below occurred, the statute unequivocally states exceptional circumstances to include illness, death of a spouse, a family member, a child. Not less compelling circumstances beyond the control of the alien. If we look at the statute as it's drafted, it states unequivocally that it must be beyond the control of the alien. And if anything, this is a square, and in my opinion, a pretty good case with regard to something that was within the control of the alien to have appeared on time. Yes, but the board has said that ineffective assistance of counsel is a circumstance beyond the petitioner's control. And what Judge Kayada has been pointing out is we wouldn't be here if counsel, at the moment the petitioner arrived 30 minutes late, the odds are great that we wouldn't be here if counsel had done her job. And she took the money from the petitioner and his mother to do that job, but she didn't go to the immigration judge. She didn't accept the IJ's invitation to let him know when the petitioner arrived to file immediately to reopen. If those steps had been taken by counsel, the result here may have been materially different. It may have been, Your Honor, but what I must say is that really, as I think Your Honor indicated with regard to the questions posited in petitioner's counsel, are we in a situation where the board views its discretion to act arbitrarily, capriciously, or contrary to law? If you look at the First Circuit, the First Circuit says unequivocally, an interpretive decision, even if coming late on a Wednesday in Boston, Massachusetts, would not in and of itself be exceptional circumstances. I think you'll have to consider there's a lot more here. If this was just a case of coming late, that would have some force. It's a lot more than that. It's a case of coming late, then being poorly served by counsel when he got there, and having a disproportionate penalty imposed for the minor tardiness, despite the fact that one of the causes of it was the ineffective assistance of counsel. Counsel, you're out of time. Is there anything that's not covered in your brief that you need to bring to our attention? No, there is not, Your Honor. Thank you very much for your time. Thank you, panel. Good morning, again. I just want to update the court. I'm sorry. You gave me four minutes and 29 seconds. Your Honor, I just wanted to update the court. Actually, Mr. Romero's mother was indeed ordered removed the same day. That's what I thought. Yes, indeed. And she has a case. Well, prison counsel is going to prepare a motion to reopen, which is waiting for the outcome of this decision, of course, to see if the judge will open, because it will go to the same IJ in this case. And just lastly, Your Honor, I just want to say that exceptional circumstances means unusual or not typical. It doesn't mean an insurmountable obstacle to reopen. Thank you. What's the status on the brother? The brother actually has deferred action for childhood arrivals. The government offered that to him, and he accepted it. And I have forgotten, what is the age relationship between the two? The two is, I believe it's only a couple of years younger, Your Honor. The brother? The brother, yes. Okay. And Mr. Maria is 26 years old. But he was 11 when he was sent in. 11 when he was sent in, correct, Your Honor, in 2008. Yes.  Thank you very much, Your Honor.